UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHRISTOPHER JANKO** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-648-RLB** |
| **THE FRESH MARKET, INC.** | **CONSENT CASE**[1] |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant The Fresh Market, Inc.'s (Defendant) Motion for Summary Judgment. (R. Doc. 41). Plaintiff filed an Opposition (R. Doc. 43) in response to the Motion. Defendant filed a Reply Memorandum (R. Doc. 48).

**I.      BACKGROUND**

In this personal injury action, Plaintiff claims he "sustained severe and permanent injury to his hand and thumb" while purchasing a glass vase along with a bouquet of flowers at Fresh Market on September 11, 2012. (R. Doc. 1-2 at 2). In his complaint, Plaintiff alleges he was helping an employee of the floral department "change vases for [his] bouquet of flowers when the vase suddenly and without warning broke in [Plaintiff's] hand." (R. Doc. 1-2 at 2). According to the employee, Plaintiff originally selected a tall vase to hold the flowers. (Calmes-Neese Dep. 38:1-20, R. Doc. 43-1 at 9). The employee proceeded to fill the vase with water and arrange the flowers as Plaintiff shopped. (Calmes-Neese Dep. 38:8-41:14, 112, R. Doc. 43-1 at 9,

---

[1] The parties consented to conduct all proceedings before the United States Magistrate Judge (R. Doc. 27). *See* 28 U.S.C. § 636(c)(1) ("Upon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case . . . .").

10, 26). Upon returning to the floral department, the employee recommended a smaller vase, which Plaintiff also preferred. (Calmes-Neese Dep. 41, 112, R. Doc. 43-1 at 10, 26). The employee then began transferring the flowers from the taller vase to the smaller vase. In an effort to help, Plaintiff grasped the taller vase to steady it. (Calmes-Neese Dep. 41:9-14, R. Doc. 43-1 at 10). According to the employee, as Plaintiff "reached to grab the vase to hold it . . . his thumb went right through [the taller] vase, and blood was everywhere." (Calmes-Neese Dep. 41:12-14, R. Doc. 43-1 at 10). The employee testified, and pictures of the vase show, that vase only broke in "one little section where [Plaintiff's] thumb went through." (Calmes-Neese Dep. 41:16-18, R. Doc. 43-1 at 10); (R. Doc. 43-2).

Following the accident, Fresh Market's floral employee and assistant manager testified that the vase was placed in a box labeled "Do Not Throw Away" and kept on a shelf in either the motor or mechanical room. (Calmes-Neese Dep. 59:3-16, 60:2, R. Doc. 41-3 at 16); (Essaied Dep. 55-57, R. Doc. 41-4 at 15-16). Fresh Market's assistant manager at the time of the incident estimated that he last saw the box containing the vase around December of 2014. (Essaied Dep. 55, R. Doc. 41-4 at 15). At some time before March 27, 2015, when the parties were scheduled to inspect the vase at issue, the box containing the vase was lost and has not been found. (Def.'s Resp. to RFA No. 3, R. Doc. 43-3 at 3) ("Fresh Market, Inc. . . . stored the vase . . . from the date of the alleged incident of September 11, 2012, until it could not be located prior to the inspection of March 27, 2015."). In its Reply Memorandum, Defendant explains that: "[T]he vase may have been discarded when there was a managerial change at the store in early January of 2015, and the new manager requested that the motor room be cleaned up without knowing there was evidence in this litigation being stored in the motor room." (R. Doc. 48 at 4). Because the vase

was never located, Plaintiff also sued the Fresh Market for spoliation of evidence and asks the Court to draw an adverse inference from the vase's absence. (R. Doc. 1-2).

In connection with Fresh Market's Motion for Summary Judgement (R. Doc. 41), the parties do not dispute the fact that Fresh Market is a non-manufacturing seller of the allegedly defective vase. (R. Doc. 43 at 1, 5, 6).  And as a non-manufacturing seller, Fresh Market argues, it is entitled to summary judgment as Plaintiff cannot establish two essential elements of his claim: (1) The existence of any defect in the vase; or (2) Fresh Market's actual or constructive knowledge of any defect. (R. Doc. 41-1 at 6).

Plaintiff responds that "a vase," like the one at issue here, "that shatters when merely held poses an unreasonable risk of harm and is thus 'defective.'" (R. Doc. 43 at 5).  Next, Plaintiff suggests that a "material issue of fact [exists] regarding Fresh Market's knowledge of the defect." (R. Doc. 43 at 6).  According to Plaintiff, the record indicates that Fresh Market's employee unpacked the vase and placed it on the shelf for display weeks before the incident. (Calmes-Neese Dep. 23:3-24:17, 31:20-21, 86:25, R. Doc. 43-1 at 4, 5, 6, 18).  Therefore, Fresh Market "should have discovered the defect while unpacking and displaying the vase." (R. Doc. 43 at 5).  Plaintiff further argues that Fresh Market assumed a duty to inspect its merchandise, including the vase, by holding monthly safety meetings. (R. Doc. 43 at 7).  Finally, Plaintiff argues that summary judgment would be inappropriate as "Fresh Market has denied the other parties a chance to prove their case by destroying the vase." (R. Doc. 43 at 7).

## II.   LEGAL STANDARD

Summary judgment shall be granted when there are no genuine issues as to any material facts and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56.  When a motion for summary judgment is properly made and supported under Rule 56(c), the opposing

3

party may not rest on the mere allegations of their pleadings, but rather must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1). The non-movant's evidence is to be believed for purposes of the motion and all justifiable inferences are to be drawn in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, summary judgment must be entered against the plaintiff, if he or she fails to make an evidentiary showing sufficient to establish the existence of an element essential to his or her claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Without a showing sufficient to establish the existence of an element essential to the plaintiff's claim, there can be "no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all facts immaterial." *Celotex Corp.*, 477 U.S. at 323 (quotations omitted).

## III. DISCUSSION

Fresh Market asserts that it is not liable in tort absent a showing that it knew or should have known of the alleged defect in the vase, but failed to declare it. As discussed below, the vase's absence does not preclude summary judgment because, for purposes of this Motion, the Court will assume the existence of a defect. But even with this assumption, summary judgment is appropriate as Plaintiff has not produced any evidence establishing an essential element of his claim — that Fresh Mark knew or should have known of the defect in the vase.

### A. Jurisdiction

Before turning to the analysis of the instant motions for summary judgment, the court will address subject-matter jurisdiction over this action. *See Ziegler v. Champion Mortgage Co.*,

913 F.2d 228, 230 (5th Cir. 1990) (the court "must consider the existence of subject matter jurisdiction on its own motion.").

Plaintiff filed this action in state court on August 22, 2013. (R. Doc. 1-1). Fresh Market removed this action on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. (R. Doc. 1). In the Notice of Removal, Fresh Market alleged that "Plaintiff has pled that he suffered injuries and damages that, if true . . . place an amount in controversy which exceeds the sum of $75,000.00." (R. Doc. 1 at 2).

After removal, Plaintiff sought to remand the action on the basis that there was not complete diversity. (R. Doc. 3). The undersigned recommended that the district judge find that there was complete diversity between the parties and deny remand. (R. Doc. 5). The undersigned noted, however, that a review of the record calls into question the amount in controversy despite the fact that the issue had not been raised by the parties. (R. Doc. 5 at 12). The undersigned stated that if the Report and Recommendation was adopted by the district judge, then the sufficiency of the amount in controversy would still need to be addressed in an appropriate manner. (R. Doc. 5 at 13).

The district judge adopted the Report and Recommendation and denied remand. (R. Doc. 6). The parties subsequently consented to appear before the undersigned. (R. Docs. 10, 27).

After Defendants filed the instant motions for summary judgment, the Court reviewed the record, and concluded that it was unclear whether it could properly exercise diversity jurisdiction over the action in light of the amount in controversy requirement. Accordingly, the Court issued a *sua sponte* order requiring the parties to brief the issue of whether at the time of removal the amount in controversy exceeded $75,000.00, exclusive of interest and costs, as required by 28 U.S.C. § 1332. (R. Doc. 49).

5

Fresh Market filed an opening memorandum arguing that the amount in controversy requirement is satisfied. (R. Doc. 50). Fresh Market represents that Plaintiff was "diagnosed with a transverse laceration of the webbing between his right thumb and forefinger and a right thumb ulnar-sided digital nerve injury, which required microsurgery followed by physical therapy." (R. Doc. 50 at 3). Fresh Market has submitted Plaintiff's medical bills, which indicate that he has incurred medical expenses of $35,884.71 for the treatment of his injuries. (R. Doc. 50-1). Fresh Market also notes that Plaintiff testified at his deposition that he believed his lost commissions resulting from the injury were approximately $75,000.00. (Janko Dep. 103:6-18, R. Doc. 50-2 at 27). Fresh Market also asserts that "[p]rior to filing suit, the plaintiff, through his attorney, made a settlement offer, which included general and special damages that significantly exceeded the amount in controversy for diversity jurisdiction under 28 U.S.C. 1332." (R. Doc. 50 at 4). Finally, Fresh Market notes that on April 1, 2016, it requested Plaintiff to stipulate that his damages are less than $75,000, but has received no response from Plaintiff. (R. Doc. 50 at 6; R. Doc. 50-3)

Plaintiff filed a memorandum arguing that Fresh Market has not offered sufficient evidence to demonstrate that it knew the amount in controversy requirement was satisfied at the time of removal. (R. Doc. 51). In essence, Plaintiff argues the summary-judgment type evidence relied upon by Fresh Market (Plaintiff's medical bills, deposition testimony regarding wage loses, and refusal to stipulate to an amount in damages below the jurisdictional requirement) all occurred after removal, and, accordingly, have no bearing on the amount in controversy at the time of removal. (R. Doc. 51 at 2-4).

If removal is sought on the basis of diversity jurisdiction, then "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy." 28 U.S.C. §

6

1446(c)(2). If, however, the "State practice . . . permits the recovery of damages in excess of the amount demanded," removal is proper "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds [$75,000]." 28 U.S.C. § 1446(c)(2)(A)(ii)-(B). Louisiana law provides that "a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." La. Code Civ. P. art. 862. Furthermore, in Louisiana state court, plaintiffs are generally prohibited from alleging a specific monetary amount of damages sought in their petitions. La. Code Civ. P. art. 893(A)(1). This prohibition on alleging a specific amount of damages, however, "is not applicable to a suit on a conventional obligation, promissory note, open account, or other negotiable instrument . . ." La. Code Civ. P. art. 893(B). Plaintiffs are also required to state whether there is a "lack of jurisdiction of federal courts due to insufficiency of damages." La. Code Civ. P. art. 893(A)(1).

     The burden of proof is on the removing defendant to establish that the amount in controversy has been satisfied. *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999). The defendant may make this showing by either (1) demonstrating that it is facially apparent that the claims are likely above $75,000, or (2) setting forth facts in controversy that support a finding of the jurisdictional minimum. *Id*. If the defendant can produce evidence sufficient to show by a preponderance that the amount in controversy exceeds the jurisdictional threshold, the plaintiff can defeat diversity jurisdiction only by showing to a legal certainty that the amount in controversy does not exceed $75,000. *See*, *e.g.*, *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *Grant v. Chevron Phillips Chem. Co.*, 309 F.3d 864, 869 (5th Cir. 2002); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995).

It is not facially apparent that the amount in controversy requirement is satisfied. The Petition merely alleges that Plaintiff "sustained severe and permanent injuries to his hand and thumb" after a glass vase broke in his hand. (R. Doc. 1-2 at 2). The Petition does not provide any specifics regarding the severity of these alleged physical injuries, other than alleging that Plaintiff suffered "significant physical pain" and "permanent scarring and disfigurement." (R. Doc. 1-2 at 3). Plaintiff seeks recovery for broad categories of damages typically alleged in personal injury actions, including emotional distress, lost wages, loss of enjoyment of life, loss of earning capacity, and medical expenses. (R. Doc. 1-2 at 3). While Plaintiff does not allege that the amount in controversy is less than the amount required for federal jurisdiction, there are insufficient factual allegations in the Petition to support a finding that the amount in controversy is facially apparent.

Defendant has, however, provided summary-judgment type evidence and facts in controversy that support a finding of the jurisdictional minimum. This Court has previously held that the amount sought in a pre-removal settlement demand letter "is valuable evidence to indicate the amount in controversy at the time of removal." *Fairchild v. State Farm Mutual Automobile Ins. Co.*, 907 F. Supp. 969, 971 (M.D. La. 1995).[2] While the Fifth Circuit has not

---

[2] All federal courts in Louisiana have relied upon and cited *Fairchild* for the proposition that pre-petition settlement letters are "valuable evidence" for determining the amount in controversy if that amount is not facially apparent. *See*, *e.g.*, *Kimble v. Am. First Ins. Co.*, No. 14-67, 2014 WL 1761556 (M.D. La. Apr. 28, 2014) (denying remand where settlement demand sought exhaustion of policy limits of $100,000 and referenced allegedly similar cases, all of which had damage awards in amounts greater than $100,000, and subsequent settlement demand was for $95,000); *Broussard v. Celebration Station Properties, Inc.,* No. 13-531, 2014 WL 1402144, at *5 (M.D. La. Apr. 10, 2014) (denying remand where settlement letter demanding $85,000 was found to be "an honest assessment of a reasonable settlement value of the case"); *McGlynn v. Huston*, 693 F. Supp. 2d 585, 595 n. 8 (M.D. La. 2010) (granting remand where the confidential pre-petition settlement letter clarified that the jurisdictional amount was not satisfied); *Daniels v. Metro. Prop. & Cas. Ins. Co.*, No. 03-1900, 2003 WL 22038371, at *3 (E.D. La. Aug. 25, 2003) (denying remand where plaintiff's counsel evaluated the claim at $150,000 in settlement demand letter); *Creppel v. Fred's Stores of Tennessee, Inc.*, No. 13-734, 2013 WL 3490927, at *2-3 (E.D. La. July 10, 2013) (denying remand where plaintiff's pre-petition settlement demand letter assessed the value of the case at $80,000); *Soileau v. Louisville Ladder Inc.,* No. 08-385, 2008 WL 1924234, at *2 (W.D. La. Apr. 28, 2008) (granting remand where pre-petition settlement demand was for $28,392.37).

8

conclusively addressed the issue of whether a pre-removal settlement demand letter can be considered as relevant evidence of the amount in controversy, "it can be inferred from several Fifth Circuit cases that such a practice is permissible when the settlement offer reflects an honest assessment of the value of the plaintiff's claims." *McGlynn v. Huston,* 693 F. Supp. 2d 585, 595 n.8 (M.D. La. 2010) (citing *Pollet v. Sears Roebuck and Co.*, 2002 WL 1939917, 46 Fed. App'x. 226 (5th Cir. 2002); *Hartford Insurance Group v. Lou–Con Inc.*, 293 F.3d 908 (5th Cir. 2002); *Wilson v. Belin,* 20 F.3d 644, 651 n. 8 (5th Cir. 1994)).

Fresh Market has not submitted the actual pre-petition settlement demand or indicated the exact amount demanded by Plaintiff prior to the filing of the action. Fresh Market indicates, however, that Plaintiff cited at least one state court decision in his pre-removal settlement demand "wherein the court awarded $500,000.00 awarded to plaintiff undergoing surgery on his right hand due to inability to separate his right thumb from his right index finger and disfigurement." (R. Doc. 50 at 7) (citing *Flemings v. State of Louisiana, et al.*, 19 So.3d 1220 (La. App. 4th Cir. 2009)). Fresh Market further represents that the settlement demand was dated January 29, 2013, and indicated that Plaintiff had incurred $32,596.96 in medical expenses at the time the demand was made. (R. Doc. 54 at 2; R. Doc. 1). Fresh Market also represents that it obtained medical records prior to removal indicating that Plaintiff had undergone "microsurgery to perform repairs to the ulnar side nerve damage to his right thumb" and invoices indicating that Plaintiff had incurred approximately $32,500 in medical expenses in light of treatment, surgery, and physical therapy. (R. Doc. 54 at 3; R. Doc. 54-2).

Furthermore, Plaintiff has testified that he believed he has lost commissions resulting from the injury in the amount of approximately $75,000.00. (Janko Dep. 103:6-18, R. Doc. 50-2 at 27). This estimated loss of commissions would necessarily include the two weeks that

9

Plaintiff did not attend work in light of the injury, and otherwise attended doctor appointments and physical therapy prior to removal of the action. (Janko Dep. 76:14 to 77:18, R. Doc. 50-2 at 27).

Finally, while a post-removal stipulation cannot change the amount in controversy, it can serve to clarify it when the amount in controversy is ambiguous. *See Marcel v. Pool Company,* 5 F.3d 81, 85 (5th Cir.1993) (citing *Asociacion Nacional de Pescadores (ANPAC) v. Dow Quimica de Colombia S.A.,* 988 F.2d 559, 565 (5th Cir. 1993)). The weight to be provided a refusal to stipulate to the amount of damages is questionable. *See Trahan v. Drury Hotels Co., LLC*, No. 11-521, 2011 WL 2470982, at *5 (E.D. La. June 20, 2011). Given the other evidence and facts in controversy submitted by Fresh Market, the Court finds that Plaintiff's refusal to stipulate to the amount of damages supports a finding that the amount in controversy requirement was satisfied at the time of removal.

In light of the foregoing, the Court concludes that Fresh Market has met its burden of establishing that the amount in controversy requirement was satisfied at the time of removal. The medical records and Plaintiff's testimony indicate that at the time of removal the special damages in this action well exceed the jurisdictional requirement without consideration of awardable general damages. Having considered the record and arguments of the parties, the Court concludes that it has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

**B.     Knowledge**

In Louisiana, "the law is clear that a non-manufacturing seller of a defective product is not responsible for damages in tort absent a showing that [it] knew or should have known the product was defective and failed to declare it." *Jackson v. Sears Authorized Retail Dealer Store*,

10

821 So.2d 590, 593 (La. App. 2 Cir. 2002); *see also Slaid v. Evergreen*, 745 So.2d 793, 797 (La. 1999). Here, Plaintiff claims that Fresh Market knew or should have known of the defect because it unpacked the vase, placed it on a display shelf for weeks and because one of its employees was handling the vase immediately before the incident occurred. (R. Doc. 43 at 1); (Calmes-Neese Dep. 23:3-24:17, 31:20-21, 41, 86:25, R. Doc. 43-1 at 4, 5, 6, 10, 18). However, these facts only highlight Plaintiff's inability to establish Fresh Market's knowledge of any defect — an essential element of his claim.

Fresh Market's floral employee handled the vase for 5 to 10 minutes before the incident. According to her testimony, she did not notice any defects in the vase, it did not seem fragile or thin. (Calmes-Neese Dep. 79, 88, 106, 112, R. Doc. 41-3 at 21, 23, 28, 29). The fact that Fresh Market's employee handled the vase immediately preceding the incident without noticing any defects establishes Fresh Market's lack of knowledge. *Shuff v. Brookshire Grocery*, 32 So.3d 1030, 1033 (La. App. 2 Cir. 2010) (child injured by baby strap on grocery store cart; evidence that the baby strap "properly functioned immediately before the accident . . . demonstrates lack of constructive knowledge" by the grocery store); *Lewis v. Albertson's Inc.*, 935 So.2d 771, 774 (La. App. 2 Cir. 2006) (no evidence of seller's knowledge of defective chair where store manager testified that he did not notice any defects while unpacking the chair, assembling it, or placing on display in the store).

Moreover, Fresh Market was unaware of any similar incidents or issues with the vases for sale in its store. Fresh Market's employee testified that the vase at issue was one of 3 identical vases on the sales floor at that time (Calmes-Neese Dep. 85-86, R. Doc. 41-3 at 23). The two remaining vases were not defective. (Calmes-Neese Dep. 95:15-96:5, R. Doc. 41-3 at 25) ("I filled them up with water and they were fine."). Moreover, in her 4 years working as a florist for

11

Fresh Market, the employee was not aware of any other vases breaking in someone's hand, nor was she aware of any "customers who bought vases from [Fresh Market] reporting broken vases once they got home or wherever they were handling them." (Calmes-Neese Dep. 72, 112, R. Doc. 41-3 at 19, 29). The absence of similar issues with this type of vase or any others sold by Fresh Market likewise supports a finding that Fresh Market, as a matter of law, did not have knowledge of the defect. *See Theard v. Ankor Energy, LLC*, 2012 WL 1398439, at *3 (E.D. La. April 23, 2012) (defendant did not have knowledge of defect in exercise equipment given the equipment's "regularity of use [and] lack of earlier incidents"); *Cormier v. Dolgencorp, Inc.*, 136 F. App'x 627, 628 (5th Cir. 2005) (granting store's motion for summary judgment where customer "produced no documentation of previous accidents, nor did she introduce any affidavit or deposition testimony of store employees that they knew a defect existed, nor did she acquire any other evidence that may have demonstrated constructive or actual knowledge."); *but compare Walters v. Kenner CiCi's*, 780 So.2d 467, 469 (La. 5 Cir. App. 2001) (holding plaintiff carried her burden by eliciting testimony from the store manager that he had found screws missing from similar chairs that caused the accident and plaintiff's injuries), *and Saulny v. Tricou House, L.L.C.*, 839 So.2d 392, 394-95 (La. App. 4 Cir. 2003) (affirming judgment for plaintiff who was injured by a collapsing plastic chair where she produced evidence that chairs of the same type had repeatedly broken over a two year period).

Finally, Plaintiff attempts to establish a genuine issue of material fact as to knowledge by arguing Fresh Market should have discovered the defect in the vase during one of its monthly safety inspections. (R. Doc. 43 at 6-7). According to Plaintiff, Fresh Market "assumed a duty" to inspect vases prior to sale because it "held a safety meeting at least monthly, and afterwards the managers would inspect the various departments and discuss safety issues." (R. Doc. 43 at 7).

12

Plaintiff relies on the following deposition testimony from Fresh Market's floral employee regarding the occurrence of safety meetings:

> I know [meetings occurred] at least once a month. . . . During the time of our store meeting. And also the managers would come around and inspect. I guess that would be the safety meeting part of it, the – they would come around to each department – and go over things with us for safety and stuff, and then we would sit – you know, sign a little paper that they explained it to us.

(Calmes-Neese Dep. 36:18-37:2, R. Doc. 41-3 at 10-11). According to Plaintiff, once Fresh Market it assumed this "duty of inspection, it had a duty to perform a prudent inspection." (R. Doc. 43 at 7).

It is well recognized that a non-manufacturing seller, like Fresh Market, has no duty to inspect a product prior to sale to determine the possibility of any inherent vices or defects. *Tunica-Biloxi Indians of Louisiana v. Pecot*, 2006 WL 273604, at *3 (W.D. La. Feb. 2, 2006). Nonetheless, "where a person voluntarily undertakes to perform a task, he thereby assumes the duty to exercise reasonable care in the performance of that task . . . ." *In re FEMA Trailer Formaldehyde Products Liability Litigation*, 838 F. Supp. 2d 497, 513 (E.D. La. 2012). In other words, if Fresh Market did voluntarily assume a duty to inspect its vases prior to sale, it may be liable if a "prudent inspection would have uncovered" the vase's alleged defect. *Slaid*, 745 So.2d at 800.

Here, the evidence cited by Plaintiff does not establish that Fresh Market assumed any duty to inspect its vases available for sale. The fact that Fresh Market held a monthly safety meeting during which managers visited and discussed safety issues with each department does not show that Fresh Market required its employees to inspect merchandise available for sale, much less that such inspections ever took place.

Rather, Fresh Market's floral employee and assistant manager both testified that no policies regarding, much less requiring, the inspection of merchandise ever existed. (Essaied Dep. 22:4-7, R. Doc. 41-4 at 7) ("Q: Were there any rules and regulations regarding the inspection of each particular vase?; A: No."); (Essaied Dep. 45:5-25, 47:5-13, R. Doc. 41-4 at 13) (no inspection policy or requirement); (Essaied Dep. 28:6-8, R. Doc. 41-1 at 8) ("Q: Did you ever have any conversations with [the floral employee] to check any of the vases?; A: No."); (Calmes-Neese Dep. 37:9-14, R. Doc. 41-3 at 11) ("Q: . . . In any safety meetings . . . did any [manager] ever give you any guidance or instructions on how to properly unpack a box of vases and place them onto the shelves for sale, for resale?; A: No."); (Calmes-Neese Dep. 108:7-15, R. Doc. 41-3 at 28) (none of the employees in the floral department were required or instructed to inspect the vases).

Consistently, Fresh Market's floral employee also explained that the vase at issue here was not inspected prior to the incident, nor were any other vases. (Calmes-Neese Dep. 106:11-107:8, R. Doc. 41-3 at 28).

Finally, this case is distinguishable from the case relied on by Plaintiff, *Slaid v. Evergreen Indemnity, Ltd.*, 745 So.2d 793 (La. App. 2 Cir. 1999). In *Slaid*, a bank selling a mobile home it acquired through repossession conducted a routine inspection of the home prior to the sale. *Id.* at 795-96. In fact, the bank had a routine policy of inspecting repossessed mobile homes prior to sale. *Id.* at 795. During the inspection, the inspector did not notice a defective condition — that the master bedroom's window "was made of solid plexiglass which was screwed into the trailer's frame." *Id.* at 795. In denying the bank's motion for summary judgment, the court found:

> Notwithstanding that [the bank] had no legal duty to inspect the home for inherent vices or defects prior to sale, once it undertook this task . . . , it assumed a duty to

> perform the inspection in a non-negligent manner. At issue in this regard is whether a normal, reasonable person . . . would or should have taken particular notice of the window's condition . . . If a prudent inspection would have uncovered the window's unreasonably dangerous condition . . . [the bank] would have had a duty to alert any future buyer . . . [W]e conclude that material issues of fact exist regarding the condition of the window and the seller's knowledge or constructive knowledge thereof.

*Id.* at 799-800.  Critically, the bank in *Slaid* did not assume a duty by having a policy of inspection, but by actually inspecting the thing to be sold.  Here, no such inspection ever took place.  Moreover, the record is equally clear that Fresh Market did not even have a policy requiring its employees to inspect merchandise prior to sale, including vases.

For the reasons given above, Plaintiff cannot as a matter of law establish that Fresh Market knew or should have known of the alleged defect in the vase.[3]  As such, summary judgment in favor of Fresh Market is appropriate.

    **C.**    **Spoliation of Evidence**

As a final matter, Plaintiff alleges a claim for spoliation of evidence under Louisiana law and seeks relief in the form of an adverse inference based on Defendant's failure to preserve the broken vase. (R. Doc. 1-2 at 4).  Although Plaintiff is allegedly "asserting both a tort claim and is seeking an adverse presumption," (R. Doc. 43 at 8 n.19), Plaintiff does not clearly indicate whether his tort claim is one for intentional or negligent spoliation of evidence.  In his Complaint, Plaintiff confusingly claims that Defendant "willfully" disposed of the vase, but was "negligent in failing to preserve the vase." (R. Doc. 1-2 at 4).  Louisiana law does not recognize a tort for negligent spoliation of evidence. *Reynolds v. Bordelon*, 172 So.3d 589, 592, 595-600

---

[3] Plaintiff additionally relies on the doctrine of *res ipsa loquitur*, this however does not preclude summary judgment in favor of Fresh Market. Use of the doctrine of *res ipsa loquitur* in a negligence case, does not relieve a plaintiff of the ultimate burden of proving by a preponderance of the evidence all of the elements necessary for recovery. *Cangelosi v. Our Lady of the Lake Medical Center*, 564 So.2d 654 (La. 1989); *see also Shuff*, 32 So.3d at 1033 ("[R]egardless of whether *res ipsa loquitur* might apply to aid the plaintiff in proof of . . . her claim under Article 2317.1, it has been shown by Brookshire's motion that she will be unable to prevail in this action . . . because the final element for recovery concerns the defendant's knowledge of the defect which is unprovable . . . .").

(La. 2015). But regardless of the ambiguities in Plaintiff's pleading, any adverse inference to be drawn from Defendant's failure to produce the vase does not preclude an award of summary judgment in Defendant's favor.

"Where a litigant fails to produce evidence available to him and gives no reasonable explanation, the presumption is that evidence would have been unfavorable to his cause. The presumption is not applicable where the failure to produce the evidence is explained." *Salone v. Jefferson Parish Dep't of Water*, 645 So. 2d 747, 750 (La. App. 5 Cir. 1994).

Here, Defendant has been unable to explain how or exactly when it lost possession of the vase. It was only until Defendant's Reply Memorandum that it offered an explanation: "It is submitted that the vase may have been discarded when there was a managerial change at the store in early January of 2015, and the new manager requested that the motor room be cleaned up without knowing there was evidence in this litigation being stored in the motor room." (R. Doc. 48 at 4). Defendant has therefore explained its failure to produce the vase.

Moreover, even if the Court found Defendant's explanation insufficient and that its failure warranted an adverse inference, that inference would not end the inquiry. *Salone*, 645 So. 2d at 751.

"The adverse presumption rule is but one factor to weigh in adjudicating the case and may not always be fatal." *Id.* at 751. Under Louisiana law, it was incumbent upon Plaintiff to prove that Defendant knew or should have known of the defect in the vase. As the Court has previously explained, Plaintiff has offered no evidence of Defendant's actual or constructive knowledge of the alleged defect. Any adverse presumption that could be drawn from Defendant's failure to produce the vase would not cure Plaintiff's inability to prove an essential element of his case. *Id.* (adverse presumption to be drawn from the defendant's failure to

preserve the defective thing at issue in the litigation would not be extended to "include or constructive knowledge," an element which the plaintiff was unable to prove).

As such, Plaintiff's spoliation claim does not preclude summary judgment in Defendant's favor. *Lewis*, 935 So. 2d at 773-74 (spoliation claim did not preclude summary judgment in favor of non-manufacturing seller; regardless of defective item's absence, plaintiff could not establish any fact issue as to seller's knowledge); *Allen v. Blanchard*, 763 So.2d 704, 709 (La. App. 1 Cir. 2000) (spoliation of allegedly defective railing did not preclude summary judgment as evidence from both parties indicated there "no noticeable defect" and thus, no issue as to defendant's knowledge); *Thompson v. Nelon's Fast Foods, Inc.*, 974 So.2d 835, 837 (La. App. 2 Cir. 2008) ("[T]he unavailability of the chair is of no significance as we assume for purposes of our review of [the trial court's grant of summary judgment] that the chair was defective and focus on the element of knowledge of the defect.").

## IV.     CONCLUSION

For the reasons given above, **IT IS ORDERED** that Defendant Fresh Market, Inc.'s Motion for Summary Judgment (R. Doc. 41) is **GRANTED**.

Signed in Baton Rouge, Louisiana, on April 25, 2016.

								_____
								**RICHARD L. BOURGEOIS, JR.**
								**UNITED STATES MAGISTRATE JUDGE**